UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

September 8, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:  *Kevin R. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
Civil No. 22-2985-BAH

Dear Counsel:

On November 17, 2022, Plaintiff Kevin R. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8), the parties' dispositive briefs (ECFs 11 and 13), and Plaintiff's reply (ECF 14). I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

I.  **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on August 10, 2020,[1] alleging a disability onset of February 2, 2020. Tr. 225–28. On February 16, 2022, Plaintiff amended his application to request DIB and SSI for closed period from February 2, 2020, until August 1, 2021. Tr. 253. Plaintiff's claims were denied initially and on reconsideration. Tr. 81–84, 139–40, 157–64. On February 17, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 31–80. Following the hearing, on May 11, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the closed period. Tr. 11–30. The Appeals Council denied Plaintiff's request for review, Tr. 1–8, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Though the "Application Summary for Disability Insurance Benefits" reflects a date of August 12, 2020, Tr. 225, both parties and the ALJ use an application date of August 10, 2020, *see* ECF 11, at 1; ECF 13, at 2; Tr. 14. I will use the same.

[2] 42 U.S.C. §§ 301 et seq.

*Kevin R. v. Kijakazi*
Civil No. 22-2985-BAH
September 8, 2023
Page 2

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "likely engaged in substantial gainful activity" from August 2021 through the present, but that prior to that time "there ha[d] been a continuous 12-month period[] during which the claimant did not engage in substantial gainful activity." Tr. 16–17. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "depression, personality disorder, anxiety disorder, post-traumatic stress disorder (PTSD), panic attacks, and obsessive-compulsive disorder (OCD)." Tr. 17. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "obstructive sleep apnea and gastroesophageal reflex disease (GERD)" and a history of alcohol abuse. *Id*. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 17–18. Despite these impairments, and after determining that Plaintiff has moderate limitations in concentrating, persisting, and maintaining pace ("CPP") and interacting with others,[3] Tr. 18, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: is able to understand and carry out both simple and complex instructions as well as routine, repetitive tasks. Must avoid work requiring a high-quota production-rate pace (i.e.- rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others). Is able to perform work activities for up to 2 hours at a time, but would then become distracted, causing the individual to be off-task. However, time off-task can be accommodated with normal breaks. Is occasionally able to change activities or work settings during the workday without being disruptive. Is occasionally able to deal with changes in a routine work setting. Is able to have occasional interaction with supervisors, occasional, non-collaborative interaction with co-workers (i.e.-

---

[3] Because Plaintiff's argument centers solely around the CPP limitation and corresponding RFC limitations, I will not address the RFC limitations regarding interacting with others. *See* ECF 11, at 9–17.

> no teamwork or positions that involve directly working with another individual), and superficial or incidental interaction with the general public.

Tr. 19. The ALJ determined that Plaintiff was unable to perform any past relevant work during the closed period, Tr. 23–24, but that he was able to perform other jobs that existed in significant numbers in the national economy during that time, including the job of Laundry Worker (DOT[4] #361.685-018), Marker (DOT #209.587-034), and Sorter (DOT #222.687-014). Tr. 24–25. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 25.

### III. LEGAL STANDARD

A disability determination must be affirmed so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence. *Britt v. Saul*, 860 F. App'x 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Id.* (quoting *Craig*, 76 F.3d at 589).

### IV. ANALYSIS

On appeal, Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence. ECF 11, at 9. Plaintiff avers that the ALJ erred by failing to "conduct a function-by-function assessment of [Plaintiff's] ability to perform the physical and mental demands of work." ECF 11, at 9. The primary thrust of Plaintiff's argument is that an explanation was required for the ALJ's findings that: (1) Plaintiff could pay attention "for two hours at a time" and (2) Plaintiff's off-task behavior could be accommodated by "normal breaks." *Id.* Defendant counters that substantial evidence supported each of the ALJ's RFC limitations. ECF 13, at 8–12.

A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In determining a claimant's RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [his] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). Moreover, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc.*

---

[4] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (alteration in original) (citation omitted). Thus, an ALJ must identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Relevant to this case, and pursuant to *Mascio*, "once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in [CPP,] the ALJ must either include a corresponding limitation in [their] RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec. Admin.*, No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted*, (D. Md. June 5, 2015). However, *Mascio* "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC" as long as the "'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020) (alteration in original) (quoting *Mascio*, 952 F.3d at 638).

Here, the ALJ limited Plaintiff to working in two-hour increments with "normal breaks" and no "work requiring a high-quota production-rate pace (i.e.- rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others)." Tr. 19. As an initial matter, the first limitation of working in two-hour increments with "normal breaks" would be insufficient on its own to accommodate Plaintiff's symptoms without an explanation as to why no further limitations are warranted. This Court has recognized that such a limitation alone is insufficient to account for moderate CPP limitations because breaks at two-hour intervals are customary even for workers *without* CPP limitations. *See Richardson v. Berryhill*, No. TJS-17-1523, 2018 WL 11474067, at *3 (D. Md. June 25, 2018) ("The ALJ's finding that [claimant] can perform work in two-hour increments with normal breaks does not adequately account for her ability to concentrate and stay on task."); *Ludlow v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-3044, 2016 WL 4466790, at *2 (D. Md. Aug. 23, 2016) (noting that an ALJ's "restriction to working in 2-hour intervals does not adequately account for a moderate limitation in the ability to stay on task, absent further explanation"); *see id*. (citing Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 (S.S.A. July 2, 1996) for the proposition that "a normal workday includes a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals, and that the occupational base is not eroded where limitations may be accommodated by these regularly scheduled breaks").

Had this provision been the only RFC restriction accounting for Plaintiff's moderate CPP limitations, the Court may have agreed with Plaintiff that the RFC determination was unsupported by substantial evidence. But such is not the case here, as the RFC also prevented Plaintiff from performing "high-quota production-rate pace" work, such as "rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others." Tr. 19. This Court has previously recognized that similar production-rate RFC restrictions are sufficient to account for a claimant's moderate CPP limitations. *See, e.g.*, *Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" was sufficient to address moderate CPP limitations); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (holding that a limitation to "no strict production

quotas" was sufficient to address moderate CPP limitations).

Moreover, Plaintiff's argument that the ALJ failed to explain this RFC determination is belied by a careful review of the ALJ's decision.[5] The ALJ here stated that "[w]ith regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation," Tr. 18, but that Plaintiff's statements regarding the "intensity, persistence, and limiting effects of his symptoms during the requested closed period" were "inconsistent," Tr. 20. The ALJ explained that Plaintiff's symptoms "appear[ed] to be related to the specific requirements of his past work" and determined that there was "no evidence from the record [that Plaintiff] would have been unable to perform a less demanding job during the requested closed period." *Id.* The ALJ contemplated further discrepancies between Plaintiff's self-reported symptoms and other evidence, noting that although Plaintiff stated that "he can only pay attention to something for a few seconds and he does not finish tasks he starts," Tr. 18, Plaintiff's November 2020 psychiatric examination indicated that he showed "no difficulty with attention, concentration, calculations, orientation, or memory," Tr. 21. The ALJ went on to note that Plaintiff "scored 30/30 on the mini mental status examination" during his November 2020 psychiatric examination and that he scored 26/30 on the mini mental status examination during a February 2021 psychological examination, with both scores indicating "normal cognition and task persistence." *Id.* These observations, based upon testimony and objective evidence, provide the Court with the requisite "logical bridge" from the evidence to the ALJ's conclusion that Plaintiff can perform work activities for two hours at a time, with time off-task accommodated by normal breaks.[6] *Woods*, 888 F.3d at 694.

---

[5] In support of his argument that the ALJ failed to adequately explain this RFC determination, Plaintiff cites to several cases ordering remand when the ALJ determined a specific time-off task limitation but failed to explain how the time-off task percentage was calculated. ECF 11, at 11–12 (citing, *e.g., Petry v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017); *Chandler v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-1408, 2016 WL 750549, at *2 (D. Md. Feb. 24, 2016); *Mims v. Berryhill*, No. TMD 16-2813 (D. Md. Aug. 28, 2017)). These cases are easily distinguishable, however, as the ALJ here made no explicit finding regarding Plaintiff's time off-task.

[6] Plaintiff also argues that the ALJ was required to explain why they did not find that Plaintiff would be off-task for an employment-prohibitive amount of time. ECF 11, at 13. This argument is flawed, however, because the ALJ was not required to make an explicit finding about the time Plaintiff would be off-task. *See Sara H. v. Comm'r, Soc. Sec. Admin.*, No. SAG-20-3358, 2021 WL 4426875, at *2 (D. Md. Sept. 27, 2021) (finding that no "'off-task' limitation" was required when the "ALJ included an RFC provision limiting Plaintiff to no 'work on an assembly line or work requiring a strict production rate pace'"). Furthermore, assessment records found to be persuasive by the ALJ in this case explicitly support the ALJ's finding that Plaintiff could concentrate for up to two hours at a time. *See* Tr. 22 (finding "generally persuasive" the reports from state agency consultants); Tr. 99 (state agency consultant assessment opining that Plaintiff "can attend to simple tasks for 2-hour periods with usual breaks"); *see also Rising v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-3053, 2017 WL 3034249, at *2 (D. Md. July 17, 2017) (finding no error in ALJ determination that claimant with moderate CPP limitation could concentrate on work for

Lastly, because the ALJ's RFC determination was supported by substantial evidence for the reasons stated above, Plaintiff's contention that the ALJ "fail[ed] to conduct a function-by-function assessment" of his work-related abilities is unavailing. ECF 11, at 9. The Fourth Circuit has held that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Mascio*, 780 F.3d at 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand is only required "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id*. (quoting *Cichocki*, 729 F.3d at 177). Because no such circumstance is present in the instant case for the reasons explained above, the lack of an explicit function-by-function analysis does not warrant remand.

In sum, where an ALJ "finds moderate limitation in CPP" and "has included a . . . restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." *Grant v. Colvin*, No. 1:15CV515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted*, slip op. (M.D.N.C. Sept. 21, 2016). Here, as discussed above, the ALJ amply supported the RFC limitation regarding Plaintiff's CPP difficulties with sufficient evidence, and Plaintiff does not argue that he cannot perform "even non-production-type work" because of his CPP difficulties. *See id.* Accordingly, I find that the RFC was supported by substantial evidence and that remand is thus unwarranted.

## V.   CONCLUSION

For the reasons set forth herein, the SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge

---

up to two hours at a time with normal breaks when state agency consultants opined as much).